UNITED STATES of America,
Plaintiff,

v.

NATIONAL BROADCASTING COMPANY, INC., Defendant.

UNITED STATES of America,
Plaintiff,

v.

COLUMBIA BROADCASTING SYSTEM, INC., et al., Defendants.

UNITED STATES of America,
Plaintiff,

v.

AMERICAN BROADCASTING COMPANIES, INC., Defendant.

Nos. 72–819–72–821.

United States District Court,
C. D. California.

Nov. 26, 1974.

Appeal Dismissed April 28, 1975.
See 95 S.Ct. 1668.

416

Bernard M. Hollander, Harry G. Sklarsky, Washington, D. C., Stanley E. Disney, Los Angeles, Cal., Barry J. Kaplan and James A. Gilbert, United States Dept. of Justice, Antitrust Division, Washington, D. C., for United States.

Schrader, Harrison, Segal & Lewis, Bernard G. Segal, Harvey Levin, Jerome J. Shestack, Michael J. Mangan, Phila-

delphia, Pa., of counsel; Gibson, Dunn & Crutcher, Samuel O. Pruitt, Jr., Don J. Belcher, John J. Hanson, Los Angeles, Cal., of counsel, for National Broadcasting Company.

Cravath, Swaine & Moore, Bruce Bromley, Jay E. Gerber, W. Dennis Cross, Robert S. Rifkind, Paul C. Saunders, New York City, of counsel; Wilmer Cutler & Pickering, Lloyd N. Cutler, C. Boyden Gray, Timothy B. Dyk, Alan S. Weitz, Washington, D. C., of counsel; O'Melveny & Myers, William W. Vaughn, Robert S. Draper, Los Angeles, Cal., of counsel, for Columbia Broadcasting System.

Bergson, Borkland, Margolis & Adler, Herbert A. Bergson, Daniel H. Margolis, Washington, D. C., Lillick, McHose, Wheat, Adams & Charles, Anthony Liebig, David Bruce Toy, Los Angeles, Cal., of counsel, for American Broadcasting Companies.

## MEMORANDUM OF DECISION

### KELLEHER, District Judge.

On April 14, 1972, plaintiff United States of America, acting by and through the Department of Justice, filed in this Court three separate actions charging the three defendant television networks, American Broadcasting Companies, Inc. ("ABC"), Columbia Broadcasting System, Inc. ("CBS"), National Broadcasting Company ("NBC"), and Viacom International, Inc., a former subsidiary of CBS (a consent judgment has been entered as against the latter named defendant), with conduct violating Sections 1 and 2 of the Sherman Antitrust Act. Each action alleged that the respective defendants have used their control of access to air time to monopolize prime time television entertainment programming.

Specifically, the actions allege that each network has used its control over access to prime evening air time (1) to exclude from network broadcasts those entertainment programs in which the network had no ownership interest, (2)

to compel outside program suppliers to grant the network financial interests in television programs which it accepts for broadcast, (3) to refuse to offer air time to advertisers and other outside program suppliers seeking to have their own programs shown on the network, (4) to control the prices paid by the network for television exhibition rights to motion picture feature films, and (5) to obtain competitive advantages over other producers and distributors of television entertainment programs and of motion picture feature films.

There has been almost no discovery as of this date directed at the merits of these law suits. The effort of both sides has been almost exclusively concerned with the affirmative defenses of the networks claiming "improper motives" on the part of the government in bringing suit in violation of their First Amendment rights.

On July 17, 1974, this Court entered orders (1) denying plaintiff's motion to strike ABC's 6th, 7th and 8th defenses, CBS's 2d, 3rd and 4th defenses, and NBC's 2d and 3rd defenses; (2) denying plaintiff's motion for a protective order against defendants' discovery relating to those defenses by limiting defendants' first phase of discovery in certain respects; and (3) requiring plaintiff to answer, within sixty days from the date of entry of the orders, interrogatories calling for the identification of documents and tapes located, *inter alia,* in the Executive Office of the President.

A month later, upon the publication of reports in the press that the government might surrender possession, custody and control of these and other documents to former President Nixon, defendants sought an order from the Court restraining any such transfer. At the hearing on that application, on August 16, 1974, the Court sought and received from plaintiff's counsel assurances that the appropriate government officials were fully apprised of the Court's pre-

vious orders and plaintiff's obligation thereunder.

On September 27, 1974, all three defendants filed identical motions, pursuant to Rule 37, Federal Rules of Civil Procedure, seeking to dismiss these actions on the ground that the plaintiff has voluntarily and intentionally failed to comply with the Court's discovery orders entered July 17, 1974, and the Court's directives of August 16, 1974, or, in the alternative, to have the facts alleged in the affirmative defenses asserting improper motives on plaintiff's part taken as established and to dismiss the respective actions upon that basis. The plaintiff filed its Memorandum in Opposition to Defendants' Motions to Dismiss on October 25, 1974.

After full oral argument in a hearing before this Court on November 11, 1974, a minute order was entered granting defendants' motions and dismissing each of the complaints without prejudice.

The Court's orders of July 17, 1974, which in substance were the same as to all three defendants, state in pertinent part:

"Within sixty (60) days from the date of entry of this order, plaintiff United States of America shall answer defendant CBS's interrogatories as modified by the Court and annexed hereto as Exhibit A."

Exhibit A provides in pertinent part:

"Pursuant to Rule 33 of the Federal Rules of Civil Procedure, defendant Columbia Broadcasting System, Inc. ("CBS") hereby requests that plaintiff identify, in accordance with the definitions and instructions contained herein, the documents described herein within 60 days from the date of service hereof."

. . . . . .

"As used herein, the term 'document' means any written, recorded, taped or graphic matter, and all copies thereof, in the possession, custody or control of the President, the Executive Office of the President, the Antitrust Division, and the Office of the Attorney General of the Department of Justice, not including the Federal Bureau of Investigation or the Watergate Special Prosecution Force."

Interrogatory No. 1—"[Identify] [e]ach document relating or referring to actual or prospective antitrust litigation, or any suggestion, proposal or decision to commence or not to commence such litigation . . . against . . . the television networks or the news media, written, recorded, sent or received by the President, any person employed in, assigned to or acting on behalf of the Executive Office of the President . . . [. . . . during the period October 17, 1969, to December 31, 1972.]"

In response to this interrogatory, the government filed in part the following answer:

"(a) Attached hereto in Exhibit A is a list identifying each document presently in the possession, custody or control of the United States Department of Justice, which relates or refers to actual or prospective antitrust litigation. . . ."

. . . . . .

"(c) Plaintiff, despite repeated written requests to counsel for the President, dated June 13, June 21, July 22, August 5, August 21, and September 10, 1974, has been unable to identify any documents of the type sought, which were within the possession, custody or control of the President or the Executive Office of the President for the reasons set forth in the letter of Philip W. Buchen, dated September 10, 1974 [See Exhibit C], except for the identification of the documents, attached hereto as Exhibit A-6, which are of public record having been released by the Senate Select Committee or the Judiciary Committee of the House of Representatives."

Exhibit C, the letter from Philip W. Buchen dated September 10, 1974, states in pertinent part:

"As I am sure you are aware, it has not been possible to furnish the information in question until their legal status was determined by the Attorney General's opinion of September 7, 1974 and the letter of agreement between former President Nixon and GSA Administrator Sampson dated September 6, 1974 ("Nixon-Sampson Agreement"). Accordingly, the files in question are not within the custody or control of the White House and can only be provided in accordance with the above Nixon-Sampson Agreement, which, of course, makes provision for the compliance with Court orders."

Defendants contend that these suits should be dismissed because plaintiff has given up possession, custody and control of former President Nixon's "documents," thereby voluntarily placing itself in a position where it is unable to comply with the Court's orders of July 17, 1974.

In its Memorandum in Opposition to Defendants' Motion to Dismiss, plaintiff argues that the plaintiff fully complied with the Court's orders of July 17, 1974, and its directives of August 16, 1974, "within its ability to do so." Plaintiff argues that dismissal here is improper because full compliance was due to circumstances outside its control rather than to willfulness, bad faith or fault. Moreover, plaintiff argues that it would be improper to dismiss this action now in light of Attorney General Saxbe's affidavit filed in support of their opposition which reaffirms as meritorious the allegations contained in the original complaint. That affidavit states in pertinent part:

"Because of the allegations that these suits were initially filed by Attorney General Richard G. Kleindienst and that their prosecution has continued as the result of allegedly improper motives or purposes on the part of those at high levels of the Executive Branch, I have undertaken a personal review of the allegations of these complaints and the relief sought by them.

"In the course of this review, I have considered the staff's factual memorandum and the several memoranda from Assistant Attorney General McLaren to the Attorney General recommending that these actions be filed against each of the networks, and have concluded that the information contained in those memoranda establishes that the allegations contained in the complaints are well founded.

"I believe it essential and in the public interest that the prosecution of these actions be continued and that the relief sought by the complaints be achieved as promptly as possible in order to restore competition in the television entertainment programming field. This is particularly important in view of the charge that the antitrust violations described in these complaints are continuing."

Preliminary to resolution of the question whether there has been any failure of compliance with the Court's orders, several important considerations arise.

First, while the Department of Justice upon proper authorization by the Attorney General brings antitrust actions, the Department is not the "plaintiff." The Department of Justice is the plaintiff's counsel. The plaintiff is the Government of the United States acting on behalf of its citizens. Therefore, when considering what action was or was not taken in compliance with the Court's orders, this Court will look to the actions or inaction of the government as a whole, not just the Department of Justice; including any action or inaction of the Executive Office of the President and its staff.

Secondly, it must be noted that any determinations made by this Court

regarding the motions before it does not involve the question of "ownership" of former President Nixon's documents. What is involved here is the "possession, custody and control" of these documents. For, as the Attorney General correctly pointed out on September 6, 1974, in his opinion on the status of former President Nixon's documents:

"Even though the Government is merely the custodian and not the owner, it can properly be subjected to court directives relating to the materials. The Federal Rules of Criminal Procedure authorize the courts, upon motion of a defendant, to order the Government to permit access to papers and other objects 'which are within the possession, custody or control of the government . . . .' Fed.R.Crim.P. 16(b), A similar provision is applicable with regard to discovery in civil cases involving material within the 'possession, custody or control' of a party (including the Government). Fed.R.Civ.P. 34(a). In addition, in both criminal and civil cases, a subpoena may be issued directing a person to produce documents or objects which are within his possession, but which belong to another person. Fed.R.Crim.P. 17(c); Fed.R.Civ.P. 45(b). *See e. g.,* Couch v. United States, 409 U.S. 322 [93 S.Ct. 611, 34 L.Ed.2d 548] (1973); Schwimmer v. United States, 232 F.2d 855, 860 (8th Cir. 1956), cert. denied, 352 U.S. 333 [833, 77 S.Ct. 48, 1 L.Ed.2d 52]; United States v. Re, 313 F.Supp. 442, 449 (S.D.N.Y.1970)."

The government has taken two positions with regard to "possession, custody and control" of former President Nixon's documents. On the one hand, in answers to the interrogatories, it stated: "the files in question are not within the custody or control of the White House and can only be provided in accordance with the . . . Nixon-Sampson Agreement." The government's briefs filed in opposition to the motions to dismiss base the contention that the government has done all "within its ability to do" on the assumption that the Nixon-Sampson Agreement validly transferred "custody" to the former President. On the other hand, the government, in oral argument, conceded in the hearing on November 11, 1974, that former President Nixon's documents are now within the government's physical custody and control.

At that hearing, this Court was informed of the pending suit, Nixon v. Sampson, (D.D.C., filed October 17, 1974) and consolidated cases, brought by former President Nixon to effectuate his agreement with the government concerning his presidential materials and documents. Judge Richey on October 21, 1974, in a temporary restraining order that was supplemented on October 22, 1974, enjoined the coming into effect of the Nixon-Sampson Agreement. The government informs this Court that at no time has any interest or claim raised by the affirmative defenses in this law suit been put before Judge Richey nor do they contemplate any such action. This Court was further informed on November 11, 1974, that an agreement between the White House and the Special Prosecutors Office was entered which now gives the Special Prosecutor, under certain conditions, access to former President Nixon's documents and files.

In support of the contention that the motion to dismiss should be denied because the government did all within its power to comply with the Court's orders, plaintiff relies on Societe et Commerciales, S. A. v. Rogers, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958). That reliance is unfounded. In *Societe,* the Supreme Court held a dismissal under Rule 37, Federal Rules of Civil Procedure, improper where plaintiff's inability to comply with the Court's order was due to circumstances outside its control, rather than to willfulness, bad faith or fault. Here, regardless of the position taken by the government on the status

of former President Nixon's documents and files, its actions appear voluntary.

■ First, on September 6, 1974, the government voluntarily entered an agreement with former President Nixon to surrender "custody" of his presidential materials. Thereafter, the government in response to the court-ordered interrogatories cited that agreement as a bar to the request for an indexing of those documents and files containing discussions of the motivation for bringing these actions. Assuming that the Nixon-Sampson Agreement accomplished what the government claims it accomplished, the government's voluntary transfer of custody to former President Nixon would obstruct the discovery process and, thereby, violate this Court's orders.

Secondly, if the former President's documents and files are, in fact, within the "possession, custody and control" of the government, as the government seems to now concede, then the government has voluntarily chosen not to comply with the Court's orders. For, as the Court was informed in the November 11, 1974, hearing, the government has made no effort to index the documents and files as required by the court-ordered interrogatories.

■ This failure or refusal of the government is predicated on their position that a claim of privilege has been asserted by the former President. Faced with that claim they could not on their own resolve that question of privilege; hence, their conduct falls short of justifying a dismissal with prejudice or a finding that the alleged improper motives are established and the actions accordingly dismissed with prejudice. However, there has been on the part of the government sufficient dilatoriness in proceeding to index the former President's materials as required by the July 17, 1974, orders, or in seeking an early determination in these cases that the assertion of privilege bars their compliance, as to warrant some sanction.

■ As *Societe, supra,* held in part: "[f]or purposes of subdivision (b)(2) of Rule 37, we think that a party 'refuses to obey' simply by failing to comply with an order. So construed the Rule allows a court all the flexibility it might need in framing an order appropriate to a particular situation." 357 U.S. at 208, 78 S.Ct. at 1094. Moreover, when faced with a violation of a discovery order, Rule 37(b)(2) provides that "the court in which the action is pending may make such orders in regard to the failure as are just." It is clear that broad discretion is reposed in this Court with regard to the imposition of sanctions on motions to dismiss for voluntary actions on the part of a party in failing diligently to do what it was ordered.

The Court regards the Attorney General's assertion that these suits are well founded as worthy of acceptance. However, one defendant has taken the position that the bad motives have so infected these suits as to be incapable of purge. We need not decide this issue, and the Court is ill disposed to allow pursuit thereof. There is a better way.

■ On the one hand this Court is faced with a clear violation of its orders by the government, while on the other, in light of Attorney General Saxbe's affidavit, it appears that defendants are in no way prejudiced by plaintiff's failure to comply with the Court's orders. A dismissal without prejudice under Rule 37(b)(2), Federal Rules of Civil Procedure, as a sanction would be fully appropriate here, for it recognizes (1) the government's failure to comply with the Court's orders and (2) the fact that plaintiff's failure to comply has not prejudiced defendants. While one defendant asserts a reservation to challenge any newly filed action because it might not have been adequately reconsidered by the Attorney General, all parties agree that a dismissal without prejudice does foreclose any future affirmative defenses to a refiling of these actions based on any improper motivation on the part of

the Nixon Administration. Also, it appears that all parties desire at an early date, and in an expeditious manner, to litigate the merits of the matter, after the filing of new actions by the plaintiff, *if it be so advised.*

Accordingly, pursuant to Rule 37(b) (2), Federal Rules of Civil Procedure, each of the respective complaints filed herein has been ordered dismissed without prejudice.