**UNITED STATES of America, Plaintiff,**

**v.**

**AMERICAN TELEPHONE & TELEGRAPH COMPANY; Western Electric Co.; Bell Telephone Laboratories, Inc., et al., Defendants.**

Civ. A. No. 74–1698.

United States District Court, District of Columbia.

Aug. 1, 1980.

Gerald A. Connell, Paul D. Sanson, Richard S. Martin, Antitrust Div., Dept. of Justice, Washington, D. C., for plaintiff.

Harold S. Levy, Jim G. Kilpatric, Michael D. Loprete, New York City, George L. Saunders, Jr., Robert D. McLean, John D. Zeglis, Chicago, Ill., Lee M. Mitchell, Washington, D. C., for defendants.

## OPINION

HAROLD H. GREENE, District Judge.

Pretrial Order No. 16 establishes a procedure for deciding, in advance of the trial, questions relating to judicial notice and the purposes for which judicial notice will be

taken. On and after October 17, 1979, the parties filed with the Court documents occupying some seventy–five file drawers which they designated as judicial notice materials to be offered into evidence for the truth of the matters asserted therein. Thereafter, the Court established a procedure to resolve issues concerning the admissibility of these judicial notice materials. Specifically, the parties were ordered to designate "test case" documents or proceedings that would be representative of the judicial notice materials generally and to file briefs raising any objections to the admission of the materials. The Court indicated that, after it had ruled on the objections, the parties would meet under the supervision of the Special Masters to apply these rulings to the remainder of the judicial notice documents.[1] This Opinion provides, therefore, a framework which can be applied, largely without further intervention by the Court, to determine the admissibility of the judicial notice materials prior to the commencement of trial.

The basic issue regarding the test care materials is whether, notwithstanding their appearance as hearsay documents, they may be admissible for the truth of the matters stated[2] under one or more of the Federal Rules of Evidence. In this regard, the materials divide into three categories.[3] The first consists of statements by government officials[4] in various forms which defendants claim are admissions by party–opponents and therefore admissible as non–hearsay under Rule 801(d)(2). The second and third categories constitute designations by the government, one consisting of various paragraphs of decisions by the Federal Communications Commission and state public utilities commissions, the other being a report by the FCC and materials used in the preparation of that report. The government asserts that the materials in both categories may be admitted under the public records exception to the hearsay rule contained in Federal Rule of Evidence 803(8)(C).

## I–Admissions by Government Officials

Three of the test case documents are statements made by officials of Executive Branch agencies of the United States government (other than the Department of Justice)[5] at proceedings before the FCC.[6]

---

1. Where this Opinion holds certain documents to be "admissible," the ruling technically refers only to their status under the hearsay rule and the exceptions thereto. However, the authenticity of the materials has already been agreed to between the parties, and few, if any, documents should be objectionable on other grounds (e. g., relevancy). Accordingly, unless a party expressly makes an objection no later than ten days after any ruling of the Special Masters in accordance with Part IV hereof, either on the basis of a misapplication of the standards established herein or on some other evidentiary basis, all judicial notice materials ruled admissible will, as of that date, be formally deemed admitted into evidence. Where there is such an objection, the Court will rule on the objection in advance of the trial, unless the evidentiary problem is such that it can be resolved only in the trial context.

2. Rule 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

3. A fourth category, consisting of the factual findings of a District Court (in *MCI Communications Corp. v. American Telephone and Tele-*

*graph Co.*, 369 F.Supp. 1004 (E.D.Pa.1974)) was withdrawn by the government which intended to rely upon them for the truth of the matters asserted therein, and at this time the Court will not give further consideration to the issue they represent.

4. Both parties agree that statements by AT&T officials qualify as non–hearsay under Rule 801(d)(2), and their agreement is adopted as the ruling of the Court.

5. The government does not contest the admissibility of statements made by Department of Justice officials.

6. These documents are: (1) Brief for the Administrator of General Services in FCC Docket 14251 (Telpak), November 9, 1961, *Defendants' Compilation of Materials to be Judicially Noticed* (hereinafter *"Defendants' Compilation"*) Vol. A–212, p. 248a, item 17; (2) Testimony of General Harold W. Grant, Director for Telecommunications Policy, Office of the Assistant Secretary of Defense, submitted as U.S. Government Exhibit 3 in FCC Docket No. 16528, *Defendants' Compilation*, Vol. A–213, p. 248p, item 17; and (3) Proposed Findings of Fact and Argument of the Secretary of Defense

Defendants propose to introduce these statements into evidence for their truth under Rule 801(d)(2)(D), which provides that a statement is not hearsay if offered against a party "by his agent or servant concerning a matter within the scope of his agency or employment, [and is] made during the existence of the relationship."

The government in response does not argue that the statements were made outside the scope of the employment of these officials. Instead it contends that for purposes of the party–opponent admissions rule the "plaintiff" in this case should not be deemed to encompass the Executive Branch in its entirety, but should be limited to the Department of Justice.

The government acknowledges, as it must, that in the Court's Opinion of September 11, 1978,[7] and in Pretrial Order No. 10 of the same date, it was held that all Executive Branch agencies, departments and subdivisions comprise the plaintiff in this case, but it asserts that this holding was and should be limited to questions of discovery under Rule 34 of the Federal Rules of Civil Procedure. That is taking too narrow a view of what was decided at that time.

In its September 11, 1978, Opinion the Court noted that this action was instituted on behalf of the United States under the antitrust laws, which "constitute a means for protecting the economic interests of the citizens of this country, not infrequently on a national scale," and that the "theory of the government's case and the relief requested are national in scope and they are likely to involve the documents and activities of a great number of government departments."[8]

In the view of the Court, the concerns and activities of the government generally are implicated by this antitrust suit, not merely those of the Department of Justice, and that is true irrespective of whether the particular issue involves rules of discovery or rules of evidence. In either context, it "makes no sense to hold that the Department of Justice, which essentially is a law office, alone comprises the United States."[9] Moreover, although the authorities on the subject are sparse, what little there is regards the Department of Justice and the Attorney General not as the plaintiff but as plaintiff's counsel, representing the "Government of the United States acting on behalf of its citizens."[10]

But, it is argued, any definition of the plaintiff as comprising the government generally in the present context would contradict the rationale of Rule 801(d)(2). Citing McCormick[11] and the Advisory Committee Notes, the government claims that Rule 801(d)(2) treats statements by party–opponents as non–hearsay (a) because the party against which the statement is being used has no need to challenge the trustworthiness of its own statement and (b) because that party has the ability to provide an explanation for the statement should the need therefor arise. Government officials from different executive departments, it is said, represent a variety of diverse and often conflicting interests, and explanations of their statements at trial could be secured by the Department of Justice only through a massive effort. These arguments cannot be accepted, for a number of reasons.

First, the admissibility of an admission by a party–opponent is a consequence, not of trustworthiness or lack of burdensomeness, but of the adversary system of litigation. The Advisory Committee Notes on the Federal Rules of Evidence explained that

in Docket 18128, March 12, 1973, *Defendants' Compilation,* Vol. A–216, p. 248e, item 12.

7. *United States v. American Telephone and Telegraph Co.,* 461 F.Supp. 1314 (D.D.C.1978).

8. *Id.,* at 1333, 1334.

9. *Id.,* at 1333.

10. *United States v. National Broadcasting Co.,* 65 F.R.D. 415, 419 (C.D.Cal.1974), *appeal dismissed,* 421 U.S. 940, 95 S.Ct. 1668, 44 L.Ed.2d 97 (1975). See also *Moore's Federal Practice,* ¶ 32.04 at 32–20 (1976); 28 U.S.C. §§ 501, 516–519. See also, cases cited in the September 11, 1978, Opinion.

11. See McCormick, *Evidence,* § 262 at pp. 628–30 (1972).

[a]dmissions by a party–opponent are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule.

See also McCormick, *Evidence*, § 262;[12] 4 *Weinstein's Evidence*, ¶ 801(d)(2)[01] at 801–136. The adversaries in this litigation are not the Department of Justice and the Legal Office of AT&T; they are the United States of America and the American Telephone and Telegraph Company, Western Electric Company, and Bell Telephone Laboratories.

A second and related reason for rejecting the government's position is that its arguments would apply with equal force to any large organization with many individuals speaking and acting on its behalf. Were the Court to accept the government's reasoning, all such organizations would effectively have to be exempted from the purview of the rule on party–opponent admissions. The unambiguous language of Rule 801(d)(2) clearly does not contemplate such a result.

Finally, the underlying theoretical premise of the government's argument is troubling and cannot be accepted. Its argument in effect is that, whenever the purpose of a rule–whether of pleading or of evidence–would be better effectuated by altering the configuration of a party to which it is applicable, then the definition of that party must be changed in midstream. Carried to its logical conclusion, this position would force the courts to change the shape and size of parties, particularly in complex litigation, depending upon the part of the case being tried and the principles of law and procedure that may be relevant at any given moment. These chameleon–like shifts in the identity of the parties would upset the orderly conduct of such litigation.

■ For these reasons, the Court rejects the proposition that the plaintiff in this case for the purposes of the rules of evidence is the Department of Justice; it holds, as it did on September 11, 1978, that the plaintiff is the United States;[13] and it concludes that the statements contained in the three test case documents in question (see note 6 *supra*) constitute admissions by a party–opponent under Rule 801(d)(2).[14]

## II–Decisions by Regulatory Commissions

Among the test case materials which the government proposes to offer as evidence for the truth of the matters asserted therein are portions of orders and decisions in six FCC dockets (Nos. 8963, 19528, 19896, 19919, 20097, 20288) and in one state regulatory proceeding (Colorado P.U.C. Docket No. 881). The government contends that these materials, though hearsay, are admissible into evidence under the "public records" exception to the hearsay rule codified in Rule 803(8)(C), which excepts from the hearsay rule

Records, reports, statements, or data compilations, in any form, of public offices and agencies, setting forth ... (C) in civil actions and proceedings ..., factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

---

**12.** McCormick states the most satisfactory justification of the party–opponent admissions rule to be "that they are the product of the adversary system, sharing, though on a lower and nonconclusive level, the characteristics of admissions in pleadings or stipulations."

**13.** Independent commissions not subject to the control of the President are excluded, just as they were in the September 11, 1978, order.

**14.** The rulings herein concern solely admissibility; they do not foreclose the opponent from attempting to refute the evidence being admitted notwithstanding the hearsay rule, nor do they assign any specific weight to such evidence. As concerns specifically the documents being admitted pursuant to Rule 801(d)(2)(D) against the government, the Court intends to assign weight thereto depending upon the character of the documents; the time when they were generated; and the status or rank of the official generating them, as well as his relationship to the issues being litigated in this case.

Defendants argue that the materials in question do not fall within the ambit of Rule 803(8)(C), either because they do not constitute "factual findings resulting from an investigation" or because they are untrustworthy, or both, and that therefore the Court should exclude such materials from admission into evidence as hearsay. They further contend that, even if the materials fall within a hearsay exception, they should be excluded under Rule 403, which allows the exclusion of evidence the probative value of which is "outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

In view of the disparate character of the different dockets, both procedurally and substantively, it is not feasible to make a blanket finding of admissibility or non-admissibility for the materials in this category. For that reason the Court has examined each docket and designated paragraphs within each docket in light of the requirements of Rule 803(8)(C) and has made determinations on that basis as to whether exclusion is or is not warranted. In its determinations the Court has been guided by the Advisory Committee Notes, prepared by the framers of the Rules, which state that Rule 803(8) "assumes admissibility in the first instance, but with ample provision for escape if sufficient negative factors are present." [15]

### A. *Factual Findings Resulting from an Investigation Authorized by Law*

The Federal Communications Commission is clearly authorized to hold hearings on investigations into newly filed charges, regulations, and practices (section 204 of the Communications Act, 47 U.S.C. § 204) either in response to a complaint or on its own motion (section 403 of the Communications Act, 47 U.S.C. § 403) and the Colorado Public Utilities Commission is similarly authorized to conduct its investigations (Colo.Rev.Stat. §§ 40–3–111, 40–4–101, 40–6–101 *et seq.* (1973)). Thus, the first part of the Rule 803(8)(C) test is met.

The next issue to be examined is whether the materials constitute "factual findings resulting from an investigation." The legislative history of Rule 803(8)(C) is unfortunately contradictory, some of it indicating that the public records exception to the hearsay rule was intended to be limited to routine reports memorializing past facts observed by the investigator, other history supporting the view that it also embraces so-called "evaluative reports." Thus, the report of the House Judiciary Committee stated that "[t]he Committee intends that . . . 'factual findings' be strictly construed and that evaluations or opinions contained in public reports shall not be admissible under this Rule." Report of the Committee on the Judiciary, H.R.Rep.No.93–650, 93d Cong., 1st Sess. 14 (1973), U.S.Code Cong. & Admin.News 1974, pp. 7051, 7088. The Senate Judiciary Committee, on the other hand, noting that the "Advisory Committee assumes admissibility in the first instance of evaluative reports," took strong exception to the House Committee's "limited understanding of the application of the rule." Report of the Committee on the Judiciary, S.Rep.No.93–1277, 93d Cong., 2d Sess. 18 (1974), U.S.Code Cong. & Admin.News 1974, p. 7064.[16]

Extrinsic materials indicate that the Rule is most appropriately considered by following the Senate Committee's position.

The Advisory Committee on the Rules found "the willingness of Congress to recognize [a substantial measure of admissibili-

---

**15.** See *Melville v. American Home Assurance Co.*, 443 F.Supp. 1064, 1115 n. 75 (E.D.Pa. 1977), *rev'd on other grounds*, 584 F.2d 1306 (3d Cir. 1978): "The clear language of 803(8)(C) and the explication of the rule by the Advisory Committee establish that official reports are presumptively admissible unless the circumstances indicate a lack of trustworthi-

ness." See also *Baker v. Elcona Homes Corp.*, 588 F.d 551, 557 (6th Cir. 1978), noting that the courts have been liberal in determining admissibility under Rule 803(8).

**16.** See *Baker v. Elcona Homes Corp.*, 588 F.2d 551, 556–57 (6th Cir. 1978) for a discussion of this legislative history.

ty for] evaluative reports" to be "a helpful guide" in determining whether findings going beyond observed facts should be admissible under Rule 803(8)(C). Indeed, its listing of factors that may be of assistance in passing upon the admissibility of evaluative reports demonstrates the Advisory Committee's acceptance of the position that the "factual findings" phase of Rule 803(8)(C) is not limited to observed facts.

Beyond that, the decisions subsequent to the promulgation of the Rule tend towards a more rather than a less expansive definition of "factual findings," and they generally permit the admission into evidence of reports and conclusions that do more than memorialize observed facts. See *Chandler v. Roudebush*, 425 U.S. 840, 863 n. 39, 96 S.Ct. 1949, 1961, 48 L.Ed.2d 416 (1976) (prior administrative findings with respect to an employment discrimination admissible under 803(8)(C)); *United States v. School District of Ferndale*, 577 F.2d 1339 (6th Cir. 1978) (HEW hearing examiner's finding that school had been established and maintained as a black school for purposes of segregation admissible); *Miller v. New York Produce Exchange*, 550 F.2d 762 (2d Cir. 1977) (Commodity Exchange Authority document containing data and conclusions about a commodity squeeze in the cottonseed oil is admissible); *Hackley v. Roudebush*, 520 F.2d 108 (D.C.Cir.1975) (administrative record is admissible at a Title VII trial de novo); *Melville v. American Home Assurance Co.,* 443 F.Supp. 1064 (E.D.Pa. 1977), *rev'd on other grounds*, 584 F.2d 1306 (3d Cir. 1978) (F.A.A. airworthiness directives impugning the mechanical safety of the model of a plane whose crash was at issue admissible); *Baker v. Elcona Homes Corp., supra* (conclusions of police officer as to color of light that he did not observe personally admissible); *contra, Complaint of American Export Lines Inc.*, 73 F.R.D. 454 (S.D.N.Y.1977) (report of Marine Board of Investigation convened by Coast Guard to examine harbor collision inadmissible).

■ The rationale for the admissibility of factual findings contained in public records, as explained in the cases cited above, lies in their fundamental trustworthiness.[17] The guarantee of trustworthiness does not necessarily reside in the contents of the records, be they facts or conclusions, but rather in their source. "[P]ublic records or reports, by virtue of their being based on legal duty and authority, contain sufficient circumstantial guarantees of trustworthiness to justify their use at trial." *Melville v. American Home Assurance Co., supra*, 443 F.Supp. at 1112. Since the reliability of the factual findings results essentially from the fact that the public official concerned is pursuing an investigation authorized by law, there is no reason not to admit the findings simply because they tend towards the conclusory rather than the factual end, unless, as Rule 803(8)(C) further provides, the "sources of information or other circumstances indicate lack of trustworthiness."[18] See Part B *infra*.

■ Rule–making proceedings present a more complicated problem in the scheme of Rule 803(8)(C). Defendants contend that the prospective, policy–oriented, rule–making character of the regulatory decisions at issue here renders them incapable of engendering the factual findings contemplated by the Rule. It is certainly true that, to the extent that a proceeding is clearly rule–making–directed in focus to regulation of future conduct, with any fact–finding at most incidental and used primarily for predictive purposes[19]–it is not addressed to

---

17. See 4 *Weinstein's Evidence* § 803(8)[03] at 803–200.

18. Compare Rule 803(6), which explicitly requires that the record be kept in the "course of a regularly conducted business activity" and as a "regular practice," with Rule 803(8), which contains no such regularity requirement.

19. This is to be distinguished from a proceeding that is clearly adjudicatory–that is, an investigation into disputed past acts with a view to determining whether those acts meet certain legal standards, with any prospective element being incidental–which certainly could yield 803(8)(C) findings.

past facts, and it therefore cannot result in factual findings under Rule 803(8)(C).[20]

The difficulty is that with respect to the great bulk of the test case materials it is impossible to draw a hard–and–fast distinction between rule–making and fact–oriented adjudication. The materials typically mix both elements; they involve the prescription of future behavior through order or rule, but at the same time they contain findings of fact made by the Commission (or an administrative law judge) upon which the issuance of rulings for the future is based. Hence, the Court is required to look beyond the label and to examine more closely the subject matter of the paragraphs designated within each docket to determine which of these constitute findings of facts or conclusions drawn from such findings, on the one hand, and which are more fully oriented towards future conduct or policy, on the other.

### 1. Simple Findings of Facts

■ A small number of the designated paragraphs [21] contain simple findings, that is, largely non–conclusory statements describing past acts or events. Even the most restrictive view of "factual finding" under Rule 803(8)(C) would embrace these paragraphs. See *Complaint of American Export Lines, Inc.*, 73 F.R.D. 454 (S.D.N.Y.

1977); Report of the Committee on the Judiciary, H.R.Rep.No.93–650, 93d Cong., 1st Sess. 14 (1973), U.S.Code Cong. & Admin.News 1974, p. 7088.

### 2. Findings as to AT&T's Methods of Analysis

■ Related to the simple findings are those paragraphs which describe and examine certain of AT&T's calculations, projections, and analyses of the costs, investments, and expenses associated with different tariffs. To be sure, opinions or conclusions as to the validity of AT&T's analyses are interspersed with the more strictly "factual" recounting of what methods AT&T used, but even as to such conclusions the Commissioners appear to have relied on their own analysis and expertise. See e. g., ¶ 11 of item 177, Docket No. 20288. The Advisory Committee Notes suggest as one factor to be taken into account in determining the admissibility of a conclusory report the "special skill and experience" of the preparer of the report. This is appropriately interpreted as an invitation to take advantage of an investigator's skill in making inferences which will aid the Court in its own fact–finding process.[22] There is little reason for the Court to reject the benefits of the Commissioners' expertise, as represented by their findings as to the validity of

---

**20.** Only one docket–FCC Docket No. 19896–clearly falls into one category or the other. That docket is almost wholly of a rule–making character; and paragraph 17 of the FCC's April 23, 1974 decision under that docket found no "existence of material factual disputes which would require an adjudicatory procedure." With no material factual issues in dispute, it is difficult to see how the proceeding could be said to yield "factual findings." The Court therefore holds that this docket did not result in "factual findings" within the meaning of Rule 803(8)(C) and that the designated paragraphs are inadmissible hearsay. It may also be noted that it is not feasible within that docket to separate out what could somehow be deemed "factual findings" from conclusions construing the scope of FCC's jurisdiction and developing standards of future conduct.

**21.** FCC Docket No. 19919, item 40, ¶¶ 21, 22; No. 8963, item 18, ¶¶ 20, 36; No. 20097, item 17, ¶ 63; Colorado P.U.C. Docket No. 881, item 54, ¶¶ 12–31; item 56, ¶¶ 12–31. An example

of such a simple finding is that in ¶ 21 of item 40 of FCC Docket 19919: "... a customer's choice of HiD, LoD, short haul or a combination of the first two is dictated by the parameters AT&T has established for the particular service.... Since a customer is restricted in his choice by his particular service requirements, it follows that HiD, LoD and short haul are distinct services, not elements used in developing a single service." Or that in ¶ 22: "The Hi–Lo rate structure clearly gives a preference to the class of persons who secure voice grade private line service between two high density rate centers more than twenty–five miles apart, and to subscribers in high density localities."

**22.** See 4 *Weinstein's Evidence*, ¶ 803(8)[03] at 803–206, stating that a conclusory report should be admitted if it is helpful to the trial judge. See also, *Chastain v. American Telephone and Telegraph Co.*, 401 F.Supp. 151, 157 (D.D.C.1975).

AT&T's projections. The Court therefore finds these paragraphs [23] to come within the rubric of "factual findings," as conclusions and inferences drawn from a combination of factual materials and the expertise of the preparer of the report. See *Baker v. Elcona Homes Corp., supra*, 588 F.2d at 558.

### 3. *Background Matters*

■ A number of paragraphs fall into the category of "background information": descriptions of past events or of other materials largely culled from other documents on the public record. For example, in a number of dockets the Commission simply summarizes the content of certain AT&T tariffs and the positions of the parties in the pleadings to the proceedings. See, e. g., Docket No. 19919, item 36, ¶¶ 11–15.

Defendants claim that such background summaries are not legitimate "factual findings" and that the government is required to prove these facts through the original documents, citing Rule 1002,[24] the "best evidence" rule.

There is no reason for concluding that these summary materials do not constitute "factual findings" of the sort required by Rule 803(8)(C). Certainly, they are not in that category merely because the Commission may have labeled them as "background." That label is simply irrelevant to the "factual findings" issue.

The best evidence rule presents somewhat more of a problem, but in the Court's view the materials in question are admissible notwithstanding that rule. The government has represented that these materials "are only involved collaterally to the principal issues in the case";[25] and Rule 1004(4) excepts from the best evidence requirement documents "not closely related to a controlling issue."[26] To require proof of these "background" facts through their underlying documents would accomplish nothing substantive; it would merely result in an accumulation in the record of large quantities of papers not central to the main issues in this case.[27] Since these documents are matters of public record, defendants should easily be able to prove inaccuracies, if any, in the government's summaries. Therefore, unless there is reason to consider these paragraphs [28] untrustworthy (see *infra*), they fall within the hearsay exception of Rule 803(8)(C).

### 4. *Matters Relating to Burden of Proof*

■ Many of the designated paragraphs focus on conclusions by the FCC that AT&T did not, in certain instances, meet the burden of proof necessary to justify a particular rate or practice under the Communications Act. These paragraphs do not contain findings by the FCC of the existence or non-existence of any fact or a series of facts, nor do they contain inferences from such findings. Rather, they reflect conclusions by the Commission that the record in a particular docket yielded no definitive answers, and that because the burden was on AT&T to produce those answers, it could not prevail. The inclusion of such conclu-

---

**23.** FCC Docket No. 20288, item 161, ¶¶ 44, 59–92; item 177, ¶¶ 10–19, 21–26, 27–51, 53–55, 56–60, 69, App. I, ¶¶ 1–22; No. 20097, ¶¶ 60–62; No. 19919, item 36, ¶¶ 66–68, 70–73; item 40, ¶ 24.

**24.** "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress."

**25.** Plaintiff's Reply to Defendants' Memorandum on Admissibility of Test Case Materials, p. 17.

**26.** Defendants claim that the best evidence rule is applicable "unless the document is only collaterally related to the fact sought to be proved, rather than to the principal issues in the case." Defendants' Supplemental Memorandum Concerning Admissibility of Test Case Materials, p. 13. This interpretation is in direct contradiction to the clear language of Rule 1004(4).

**27.** See also, Rule 1006.

**28.** FCC Docket No. 19919, item 2, ¶¶ 6–7; item 36, ¶¶ 7, 11–15; No. 20288; item 161, ¶¶ 9–12, 14, 21, 38; item 185, ¶¶ 5–18, 20–22 (these paragraphs basically summarizing and affirming prior decision in same docket); No. 19528, item 5, ¶¶ 6–15; No. 8963, item 18, ¶¶ 15, 18–19, 28–35; No. 19896, item 29, ¶¶ 2–9.

sions within the category of "factual findings resulting from an investigation" of Rule 803(8)(C) would stretch that hearsay exception beyond the bounds of its previous applications, especially if the materials were introduced to prove the non–existence of the particular state of affairs which AT&T did not meet its burden of proving. Conclusions of this sort would simply not be helpful to a trier of fact in making his way through the maze of information connected with this case.[29] The Court concludes that paragraphs [30] concluding that AT&T failed to satisfy a burden of proof under the Communications Act do not constitute "factual findings" under Rule 803(8)(C).

### 5. Findings of Unfair Rates and Practices

■ The government proposes to introduce into evidence a number of paragraphs containing findings of violations of provisions of the Communications Act, or findings of unlawful discrimination, of unreasonable and practices, unjust rates, and the like. Where such conclusions result from other FCC conclusions not constituting factual findings–i. e., FCC findings that AT&T has not met its burden of proof–they are not regarded as "factual findings" under this Rule (since to construe them otherwise would bring the non–findings in through the back door).[31] However, where the FCC reached its conclusions as a result of facts found in the course of its investigation–just as the Hearing Examiner did in United States v. Ferndale, supra [32]–they constitute inferences from the facts before the Com-

mission, and thus are "factual findings" under Rule 803(8)(C).[33]

### 6. Mixed Findings of Fact, Law and Future Policy

■ The remaining paragraphs in these dockets contain a mixture of statements of fact, legal conclusions, predictions of future events, and prospective rulings on the course of AT&T's conduct. It would be difficult, if not impossible, to separate out with respect to these materials those elements that would qualify as "factual findings" from those that are primarily conjectures by the FCC as to how the future will or should unfold. On that basis, these paragraphs [34] will not be deemed "factual findings" within Rule 803(8)(C). See John McShain, Inc. v. Cessna Aircraft Co., 563 F.2d 632, 636 (3d Cir. 1977) (trial judge justified in excluding accident reports by National Transportation Safety Board where "reception of such reports into evidence would have involved a lengthy attempt to sift out admissible hearsay").

### 7. Multiple Hearsay

Defendants contend that the test case materials which are "factual findings" within 803(8)(C) must nevertheless be excluded in most instances because they constitute "multiple hearsay" under Rule 805,[35] that is, the matters which the government seeks to prove through these decisions were not within the first–hand knowledge of the Commissioners and staff who issued the decisions.

---

**29.** See note 22, supra.

**30.** FCC Docket No. 19919, item 36, ¶¶ 56–57, 63; item 40, ¶¶ 20, 25–26; No. 20288, item 177, ¶¶ 92–96.

**31.** These paragraphs are included in the list in note 30 supra.

**32.** See also Baker v. Elcona Homes Corp., supra, 588 F.2d at 557; and see the discussion at pp. 359–360, 361–362 supra.

**33.** FCC Docket No. 19919, item 36, ¶¶ 62, 64; No. 20288, item 161, ¶¶ 45–48, 93–104, 111–124, 132–142; item 177, ¶¶ 84–90; No. 20097, item 17, ¶ 6.

**34.** Colorado P.U.C. Docket No. 881, item 54, Conclusions ¶¶ 1–7; item 56, Conclusions ¶¶ 1–6; FCC Docket No. 19528, item 5, ¶¶ 16–19; item 11, ¶¶ 30–33; No. 20097, item 17, ¶¶ 7, 9, 68, 77–78, 88, 120–29.

**35.** "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." Defendants do not specify which dockets or paragraphs within dockets ought to be excluded on this ground.

Although the multiple hearsay problem has been mentioned with regard to Rule 803(8)(C) (see *Hackley v. Roudebush, supra,* 520 F.2d at 156, n. 195 (D.C.Cir. 1975)), it has generally been held that the author of the report or decision is not necessarily required to have first–hand knowledge of the facts upon which his findings are based. *United States v. Smith,* 521 F.2d 957 (D.C.Cir.1975); *Fraley v. Rockwell International Corp.,* 470 F.Supp. 1264, 1267 (S.D.Ohio 1979). Where the trial judge finds the investigative findings to be reliable, their admissibility under Rule 803(8)(C) is warranted even if the findings are not the result of the direct personal knowledge of the author of the findings. 4 *Weinstein's Evidence,* ¶ 803(8)[03], at 803–203–04. Thus, the multiple hearsay issue is reducible to one of the trustworthiness of the factual findings.

### B. *Trustworthiness*

Rule 803(8)(C) excepts from the hearsay rule public records containing factual findings "unless the sources of information or other circumstances indicate lack of trustworthiness." The burden is on the party disputing admissibility to prove the factual finding to be untrustworthy. *Baker v. Elcona Home Corp., supra,* 588 F.2d at 558.

The Advisory Committee Notes list a number of factors which may be of help in determining the trustworthiness or lack thereof of a Rule 803(8)(C) factual finding.[36] Two of these–the special skill and expertise of the official and the holding of a hearing–were raised in some form by the defendants in the attack on the trustworthiness of the materials proffered by the government, and they must accordingly be considered.

### 1. *Agency Expertise*

There is no dispute about the FCC's expertise to find and evaluate facts in light of the standards of the Communications Act. Defendants argue, however, that the expertise of that agency relates to communications rather than to antitrust matters, that the test case decisions follow the standards of the Communications Act rather than those of the antitrust laws, and that for these reasons the factual findings at issue are inherently untrustworthy in an antitrust context. In elaboration, defendants assert that the FCC applied the "broad public interest standard of the Communications Act, while factual issues in this case must be analyzed under the competition standard of the antitrust laws." Defendants' Memorandum on Admissibility of Test Case Materials, p. 33.

For a number of reasons, the Court concludes that the findings in question are not unreliable or untrustworthy merely because they were made in a context different from the one in which they are sought to be introduced.

First, it is not appropriate to distinguish between Communications Act standards and antitrust standards on the basis that the former are in the "broad public interest" area while the latter serve the interests of "competition." Although technically the Communications Act focuses on public necessity and convenience and the Sherman Act on competition, in a very real sense both the FCC, in its enforcement of the Communications Act, and the courts, in their application of the antitrust laws, guard against unfair competition and attempt to protect the public interest.

Second, the FCC did not close its eyes to the parallel requirements of the antitrust laws in making its findings under the Communications Act. For example, in its Final Decision and Order in Docket No. 20288, the Commission stated that

---

**36.** These factors are "(1) the timeliness of the investigation, . . . ; (2) the special skill or experience of the official . . . ; (3) whether a hearing was held and the level at which conducted . . . ; (4) possible motivation problems suggested by *Palmer v. Hoffman,* 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645. . . ." [citations omitted]. Neither timeliness nor motivational problems were raised by defendants as constituting a basis for a finding of the unreliability of the test case materials.

we hope to make the 'full and fair competition' obligations of the carriers consistent with similar obligations imposed pursuant to the antitrust laws.[37]

See also, *Chastain v. American Telephone and Telegraph Co.*, 401 F.Supp. 151 (D.D.C. 1975) (as to matters "such as the reasonableness of [a particular AT&T policy] within the meaning of the Sherman Act, and the policy's effect on competition, the FCC's findings will be received as evidence where relevant." 401 F.Supp. at 157–158).

Third, since the telecommunication laws do differ from the antitrust laws in some significant respects, findings under the former will obviously carry less weight than those made pursuant to the latter, and they certainly carry less weight than facts established by direct evidence.[38] But these are matters of weight rather than of admissibility, and they do not warrant the exclusion of the FCC findings.

### 2. *Proceedings Not Involving Hearings*

Two of the test case dockets—FCC Docket No. 8963 and Colorado P.U.C. Docket No. 881–involved hearings with live testimony and cross examination, and there is therefore no trustworthiness question in their regard.[39] The other dockets were primarily "paper hearings" without the full battery of evidentiary safeguards characteristic of "trial–type" proceedings.

 Defendants contend that a "paper hearing" is inherently incapable of engendering trustworthy factual findings due to the absence of such safeguards. However,

the law is that lack of a formal hearing is not necessarily fatal to the reliability of a factual finding under Rule 803(8)(C) where other indicia of trustworthiness are present. *Baker v. Elcona Homes Corp., supra,* 588 F.2d at 558; see also *United States v. Ferndale, supra,* 577 F.2d at 1354–55 (lack of subpoena power and discovery at administrative proceedings insufficient to upset the trustworthiness of that proceeding).[40]

With respect to all of the dockets, AT&T was afforded and took advantage of its "full opportunity for hearing" required by section 205(a) of the Communications Act, 47 U.S.C. § 205(a), allowing it to file written comments with the FCC, and replies to comments made by other parties. See *American Telephone and Telegraph Co. v. F. C. C.,* 572 F.2d 17, 22 (2d Cir. 1977). In affidavits before the Special Masters in this case, defendants conceded that the extensive "paper proceedings" in one docket (No. 19919) did "provide the parties the equivalent protections inherent in a trial type hearing with oral cross–examination." Plaintiff's Reply to Defendants' Memorandum on Admissibility of Test Case Materials, p. 29. AT&T and the other parties also apparently had the right to petition for a trial–type hearing with oral cross–examination, but chose not to exercise that right.

 The Court concludes that, since AT&T had the opportunity to argue its position and to reply to opposing positions before the Commission at length, albeit on paper, the materials possess sufficient reliability to prevent lack of a formal hearing in

---

**37.** Docket No. 20288, item 177, ⁺ 82, 62 F.C. C.2d 774, 798 (1977).

**38.** See note 14, *supra.*

**39.** Given this guarantee of trustworthiness, the Court holds that, to the extent the designated paragraphs in these dockets are factual findings, see notes 21 and 28, supra, they fall within the 803(8)(C) exception to the hearsay rule, and are admissible for the truth of the matter asserted.

**40.** The cases defendants cite hold only that the principle of collateral estoppel does not apply to non–adjudicatory agency action because of

the lack of adjudicatory safeguards in rulemaking (see, *e. g., International Telephone and Telegraph Corp. v. American Telephone and Telegraph Co.,* 444 F.Supp. 1148 (S.D.N.Y.1978)) and for that reason they are not relevant here. The government does not request that the FCC findings be regarded as binding but only that it should be allowed to introduce them for their truth notwithstanding the hearsay rule, with full opportunity to defendants to prove the contrary during the trial. See *IT&T v. AT&T,* 444 F.Supp. 1148, 1160 n. 2 (S.D.N.Y.1978).

and of itself from destroying their trustworthiness.[41]

### 3. 'Findings of Unfair Rates and Practices

Inasmuch as they contain elements of legal conclusion in addition to not being the product of oral hearings under antitrust standards, the FCC findings of anticompetitive, unfair, or unreasonable rates and practices present a closer question of reliability than do the types of materials discussed above. Nevertheless, the Court has concluded that they are not untrustworthy and therefore not inadmissible. As already noted, a finding is not outside the scope of the Rule merely because it also includes the conclusions of the finder of facts; it is not inherently unreliable merely because it was made under the matrix of the Communications Act; and it is not untrustworthy merely because the proceeding which produced it was conducted on the basis of documents alone.

Additionally, it is significant that the public agency which made these findings is an independent regulatory commission, apart from the Executive Branch, and operating under stringent procedural guidelines on a public record. See generally, 47 U.S.C. §§ 151 et seq.; American Telephone and Telegraph Co. v. FCC, supra, 572 F.2d at 23.[42] That circumstance provides an element of trustworthiness which might not be present with respect to a public record generated by a person or body lacking these characteristics.

■ Nevertheless, especially in view of the existence here of a combination of factors tending toward lack of reliability, it is important to emphasize the limited purpose for which these materials are being received. They are not being admitted as conclusive evidence of the nature of the conduct of the defendants in this case. The Court will make its own findings with respect to that issue, and in doing so it will of course not be bound by the decisions of the Commission, but it will admit other evidence on the issue of whether defendants' rates and practices resulted in the exclusion of competition.[43] Beyond that, the Court expects that a bare conclusion by the FCC that a particular practice was anticompetitive will not be sufficient, without substantial other evidence, to sustain a finding of a Sherman Act violation with respect to the transactional episode to which that conclusion relates. See Chastain v. American Telephone and Telegraph Co., supra, 401 F.Supp. at 157–58.

■ With that caveat, the Court holds that the findings of anticompetitive, unfair, or unreasonable rates and practices reached by the FCC as a result of facts found by that agency in the course of its investigations are admissible under Rule 803(8)(C).[44]

---

**41.** Defendant argues that certain dockets are untrustworthy because not all of the Commissioners subscribed to the findings reflected in the final decisions. The fact that some of the Commissioners did not concur with all of the findings does not make them any less trustworthy for the evidentiary purposes. See United States v. Ferndale, supra, 577 F.2d at 1349, where administrative findings were admitted under Rule 803(8)(C) even though only two out of the four–member reviewing authority affirmed these findings (the other two finding them unnecessary to the ultimate decision).

**42.** During earlier phases of this litigation, defendants argued vigorously for a referral of a substantial proportion of this case to the FCC under the doctrine of primary jurisdiction. United States v. AT&T, supra, 461 F.Supp. at 1314. Upon such referral, the FCC would presumably have made findings not unlike those which are here at issue, and such findings would presumably have been accorded at least as much weight as will be given to those which the government seeks to introduce through the current proceeding. Chastain v. AT&T, supra, 401 F.Supp. at 158.

**43.** The purpose and focus of such evidence, when introduced by defendants, will be to rebut the government's trial evidence of Sherman Act violations, as distinguished from such collateral issues as the sufficiency of the procedures of the FCC or the correctness of its application of the Communications Act to the record before it in arriving at these findings. See United States v. Pollock, 394 F.2d 922, 925–26 (7th Cir. 1968); United States v. Bowe, 360 F.2d 1, 12 (2d Cir. 1966).

**44.** See paragraphs listed in note 33 supra.

### III–Agency Reports

■ The government has also designated for evidentiary use, to be admissible under the Rule 803(8)(C) exception to the hearsay rule, twenty–nine items relating to a 1939 Report of the Federal Communication Commission on the Investigation of the Telephone Industry in the United States pursuant to P.R. No. 8, 74th Congress (FCC Report). These twenty–nine items include the FCC Report itself, a proposed version of the Report not adopted by the Commission commonly known as the Walker Report, and twenty–seven memoranda prepared by the FCC staff for use in preparing the Walker Report. These reports and memoranda are quite bulky (the FCC Report containing 661 pages, the Walker Report 778 pages, and many of the memoranda reaching similar lengths), and the government has asked that they be admitted in their entirety, without designation of particular paragraphs or sections (as was done for the regulatory agency decisions discussed above). In addition, the government has requested that the Court find admissible a memorandum prepared by the Communications Division of the New York Public Service Commission relating to its Case No. 26894.

The Walker Report, the staff memoranda, and the memorandum prepared for the New York Public Service Commission all have in common that they were never adopted as factual findings by the agencies for which they were prepared. The foreword to the Walker Report states explicitly that the document is a proposed draft, not intended to commit the Commission as to findings of fact. Walker Report, at III. The twenty–seven staff memoranda used in the preparation of the Walker Report are even further removed from final findings of fact by a public agency. The New York Public Service Commission memorandum was attached to an order by the Commission served on all New York telephone companies for the purpose of soliciting comments on the issue of whether the interconnection program of the Rochester Telephone Corporation should be modified or extended to other companies. As such, it merely served as a vehicle by which information could be gathered for eventual factual findings.

Thus, none of these items constitutes findings of fact by the respective agencies as required by Rule 803(8)(C). See *United States v. Corr*, 543 F.2d 1042, 1050-51 (2d Cir. 1976) (SEC release or announcement notifying public of certain facts was not a determination of facts by the agency obtained after administrative proceedings, and thus was outside of 803(8)(C) hearsay exception).

The FCC Report itself was adopted by the Commission and submitted to the Congress pursuant to P.R. No. 8. Defendants contend that since the Report was the product of a rulemaking proceeding by an administrative agency, employing standards and procedures different from those used in adjudication or in routine investigatory fact finding, it could not be characterized as containing trustworthy factual findings for the purposes of Rule 803(8)(C). As stated above, a finding is not without the scope of Rule 803(8)(C) merely because it resulted from a procedure containing rulemaking elements. However, other features of this Report and the context in which the government proposes to introduce it into evidence combine to compel the conclusion that it may not be admitted.

The FCC Report is over 600 pages long. Although, the Report proposes in some fashion to isolate its descriptive from its recommendatory and conclusory sections, the government has not designated particular paragraphs or sections for evidentiary purposes but requests admission of the entire document. The Report appears to run the gamut from straight factual description to speculative conclusions about the American Telephone and Telegraph Company. Introduction of the Report on that basis would require the Court on its own to sift through hundreds of pages to extract factual findings from conjecture. On that ground alone, the Court would be justified in holding that Report inadmissible. See *John McShain, Inc. v. Cessna Aircraft Co.*, supra, 563 F.2d at 636.

Further, reception of the Report into evidence would no doubt generate an extensive effort on the part of AT&T to litigate extensively on matters that the government itself concedes to be tangential to the issues in this case: the history of the telephone industry prior to 1939.[45] Rule 403 of the Federal Evidence rules permits the Court to balance the probative value of evidence against considerations of undue delay or waste of time, and to decide in favor of exclusion where the latter outweighs the former. Although the Court does not rule at this time that the early regulatory history of the telephone industry is not relevant to the issues in this case, it does hold that the probative value of the FCC Report is outweighed by the delay and waste of time at trial that would ensue upon its introduction, and that the Report should therefore be excluded.[46]

### IV–Conclusion

With this Opinion and the contemporaneous order, the Court has now ruled on the admissibility of all test case materials the admissibility of which is still in dispute between the parties. These rulings provide standards which may be applied to the remainder of the judicial notice materials to determine their admissibility without further intervention by the Court. To facilitate these determinations, the Special Masters will supervise the labeling of the judicial notice materials which the parties wish to introduce into evidence, as either admissible or inadmissible, in accordance with the standards set out above. To the extent that disputes arise as to how the standard should be applied to particular items, they will be resolved by the Special Masters by September 15, 1980. The rulings of the Special Masters may be appealed to the Court, and the Court will also consider in advance of trial[47] objections to the admission of judicial notice materials on grounds other than hearsay.

**45.** In Plaintiff's Third Statement of Contentions and Proof at p. 1783, the government states, regarding defendants' discussion of the early history of the industry,

... enormous amounts of time and resources of the Court and the parties should not be needlessly consumed both in the pretrial and trial stages of this litigation in efforts to establish the true facts regarding ancient matters and nebulous claims which inherently are not susceptible to exact proof and which

have no demonstrated relevance to triable issues in this lawsuit.

**46.** This analysis under Rule 403 would also apply to the Walker Report and the FCC staff memoranda were they otherwise admissible.

**47.** It is expected that, to the maximum extent possible, all disputes concerning the admissibility of the judicial notice materials will be finally resolved in advance of the trial.