Warren Lloyd BRIGHT, Paul M. Shelton and William Ralph Whittaker, Plaintiffs-Appellants,

v.

FIRESTONE TIRE & RUBBER COMPANY, Defendant-Appellee.

No. 83–5417.

United States Court of Appeals, Sixth Circuit.

Sept. 7, 1984.

Hal Gerber, argued, Gerber, Gerber & Agee, James H. Mathis, Memphis, Tenn., Joe C. Hailey, Selmer, Tenn., for plaintiffs-appellants.

William H. King, Jr., argued, David H. Worrell, Jr., McGuire, Woods & Battle, Richmond, Va., J.N. Raines, Memphis, Tenn., for defendant-appellee.

Before ENGEL and KENNEDY, Circuit Judges, and WISEMAN *, Chief Judge.

PER CURIAM.

Plaintiffs appeal from denial of their motion for a new trial following a jury verdict for defendant. Plaintiffs are the fathers and representatives of three young men killed in a car accident in Selmer, Tennessee. Decedent Randall Bright had acquired a Corvette on July 3, 1978. On the night of July 3, Bright showed the Corvette to a group of people socializing and drinking beer in a radio station parking lot. Bright allowed decedent Donald Whittaker to drive the Corvette, with Bright and decedent Randall Shelton as passengers. The accident occurred in the early morning hours of July 4. There were no witnesses. The car left the road, turned one hundred and eighty degrees, and struck an embankment with great force, killing all three occupants.

The two rear tires on the Corvette were Firestone 500 tires manufactured by defendant. The front two Firestone 500's, which were original equipment on the Corvette, had become worn out and were replaced by another brand before Bright acquired the car. Plaintiffs brought suit against Firestone, claiming that the acci-

---

* Honorable Thomas A. Wiseman, Jr., United States District Court for the Middle District of Tennessee, sitting by designation.

dent was caused by separation of the tread in the right rear tire. The case proceeded to trial on three theories of liability: negligence, strict liability, and breach of warranty. After seven days of testimony the District Court submitted all issues to the jury, which returned verdicts for the defendant and against each plaintiff. The District Court denied plaintiffs' motion for a new trial, and plaintiffs appeal.

The plaintiffs' first argument is that the District Court erred in holding that contributory negligence is a defense to strict liability. Defendant denies that the District Court ever made such a ruling. The plaintiffs' contention is apparently based on a discussion, which took place before voir dire, concerning the admissibility of evidence that the driver of the Corvette had been drinking. The District Court indicated that it would follow its ruling in a previous case in which "the court did allow proof on those issues, but the point is that you have got to look at the various claims and defenses and contentions of the parties." App. at 110.

Six days before, the plaintiffs had amended their complaints so as to remove the negligence claim. They argue that the District Court's indication that evidence concerning alcohol would be admissible must have meant that the District Court considered such evidence of the driver's contributory negligence relevant to the strict liability claim, since there was no negligence claim in the case at the time. Immediately before the trial commenced, however, the plaintiffs reinstated their negligence claims. Plaintiffs assert that they only reinstated their negligence claim because of the Court's indication that it would allow evidence of contributory negligence whether or not the negligence claim was pursued.

■ Plaintiffs' argument concerning their reason for reinstating the negligence claims is disingenuous, as the record clearly shows that the reason they reinstated the negligence claims was that without the negligence claims no punitive damages could be allowed. App. at 112–117. Since the case was tried in part on a negligence theory, evidence that the car's driver was intoxicated was clearly admissible. Plaintiffs do not claim to have even objected to its admissibility at trial.

■ Even disregarding the negligence claims, the District Court's statement cannot be considered a ruling that contributory negligence is a defense to strict liability. The District Court did not even refer to contributory negligence. The Court merely indicated that the evidence would be admitted if found relevant to any of the issues in the case. Evidence that the car's driver was intoxicated could be relevant to the issue of causation, which is an element of a strict liability cause of action. *Browder v. Pettigrew*, 541 S.W.2d 402 (Tenn.App.1976).

■ Plaintiffs' next contention is that the jury's verdict demonstrates "passion, prejudice, or unaccountable caprice." Plaintiffs do not point to anything that would suggest that the jury was subject to improper influences or carried away by emotion, however. Instead, they engage in a discussion of the evidence supporting their case. That there was evidence favoring the plaintiffs is no reason for concluding that the jury must have been carried away by passion or prejudice or it would not have found for defendant. *See Alessio v. Crook*, 633 S.W.2d 770 (Tenn.App.1982). There was sufficient evidence to support a verdict for defendant. There was evidence from which the jury could reasonably have concluded that the driver was intoxicated, that the car was traveling 120 miles per hour, that the tire was worn in places down to the steel belt, and that the tire had been seriously damaged by underinflation. The jury may have concluded that the tire was not defective, or it may have concluded that the accident was caused not by a defect in the tire, but by some unrelated cause such as a worn tire or an intoxicated driver in combination with excessive speed.

Finally, plaintiffs contend that the District Court erred in refusing to allow introduction as evidence certain parts of the report of the Moss Committee, a subcom-

mittee of the Committee of the House of Representatives on Interstate and Foreign Commerce, a report of the National Highway Traffic Safety Administration, a statement Firestone's general counsel made to the Moss Committee, and Firestone's answers to interrogatories propounded by the National Highway Traffic Safety Administration.

These documents were all tendered to the court for identification purposes after the jury began deliberating. The record shows that plaintiffs' counsel initially asked only that they be put in the record for identification purposes. Plaintiffs' counsel then moved for leave to reopen the proof so that the documents could be introduced as evidence. The District Court denied the motion. Except for certain parts of the Moss Committee report, which were proffered in the plaintiffs' case in chief, these documents were never proffered as evidence and the plaintiffs may not now claim that the documents were not introduced. The District Court was within its discretion in denying the plaintiffs' motion to reopen the proof.

The plaintiffs did attempt to introduce portions of the Moss Committee report in their case in chief. The District Court apparently held the report inadmissible as part of the plaintiffs' case in chief but reserved its ruling as to admissibility for other purposes. App. 403–07. Counsel for plaintiffs read into the record those portions of the report he sought to have admitted as evidence. App. 368–82. The Moss Committee conducted an investigation into the safety of the Firestone 500 tire. The portions of the report read into the record are generally findings and conclusions regarding the safety record of the Firestone 500 drawn from empirical evidence regarding numbers of accidents, lawsuits, and customer complaints requiring adjustment. The report extract relied heavily on data regarding the tire's adjustment ratio, or frequency of consumer complaints, and concluded that the 500 "stands alone as a problem tire." It severely criticized Firestone for not taking into account the propensity of consumers to allow tires to become underinflated. The report relied on empirical data regarding accidents, lawsuits, and consumer complaints involving the 500 and was not based on any investigation into specific defects or manufacturing problems, acknowledging that "[t]he subcommittee has not sought extensive evidence or testimony on the technical aspects of problems with the Firestone 500 Steel Belted Radial Tires."

Plaintiffs contend that these excerpts should have been admitted under Fed.R. Evid. 803(8)(C), which states: "Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness [are admissible]."

To be admissible under Rule 803(8)(C) a report must first be a set of "factual findings." *Baker v. Elcona Homes Corp.*, 588 F.2d 551 (6th Cir.1978). Much of the proffered evidence comprises the Committee's subjective conclusions regarding Firestone's culpability, rather than factual findings. The only true factual finding is that the Firestone 500 has compiled a poor safety record.

Rule 803(8)(C) also requires that the report not be subject to circumstances indicating a lack of trustworthiness. This determination is within the discretion of the trial court. *Miller v. Caterpillar Tractor Co.*, 697 F.2d 141, 144 (6th Cir.1983). The report was based on hearsay regarding lawsuits and customer complaints without any investigation into the ground for those complaints. Defendant attached to its memorandum regarding admissibility of the report a copy of an order of the United States District Court for the District of South Carolina that found that one Firestone dealer had submitted approximately 600 false complaint forms to Firestone as part of a scheme to defraud Firestone. The unverified nature of the evidence relied on by the Committee is sufficient reason

for the District Court to find in its discretion that the report is not trustworthy enough to be admissible.

Even if the requirements of Rule 803(8)(C) were met, the District Court would still have discretion to exclude the report under Rule 403 if its probative value was substantially outweighed by the danger of unfair prejudice. The probative value of the report in this case is minimal. Showing that the public generally had more problems with the Firestone 500 than with other tires does not prove that the particular tire involved in this case was defective, and has nothing to do with whether a tire defect caused this particular accident. Moreover, the District Court found that "much of [the proposed evidence] could really be argued on the basis of what's already in evidence and on reasonable inferences that might be drawn from those facts that are in evidence." There was a substantial danger of unfair prejudice because the jury may have been influenced by the official character of the report to afford it greater weight than it was worth. It would be extremely difficult and time-consuming to evaluate the report's trustworthiness by examining all the data on which it was based. The report also contains extraneous criticisms of Firestone that might have swayed the jury although not necessarily relevant to the case.

The District Court was within its discretion in excluding excerpts from the Moss Committee report from introduction into evidence as part of the plaintiffs' case in chief.

Accordingly, the judgment of the District Court is affirmed.