John M. PEARCE, Plaintiff,

v.

The E.F. HUTTON GROUP, INC., et al., Defendants.

Civ. A. No. 86–0008.

United States District Court, District of Columbia.

Feb. 12, 1987.

Stephen Milliken, Milliken, Van Susteren & Canan, and John P. Coale, Washington, D.C., for plaintiff.

John Walsh, Michael Dolan, Harvey Spear, Cadwalader, Wickersham & Taft, New York City, Washington, D.C., for defendant E.F. Hutton.

Earl J. Silbert, Allen V. Farber, Schwalb, Donnenfeld, Bray & Silbert, Washington, D.C., for defendant Bell.

## MEMORANDUM OPINION

FLANNERY, District Judge.

This matter came before the court at a status conference held on February 9, 1987, and upon defendant Bell's motion to strike plaintiff's opposition to Bell's motion for partial summary judgment. After hearing oral argument, and after considering Bell's motion, the plaintiff's opposition, the underlying papers, and the entire record in this case, this court concludes that the congressional hearing materials, relied upon by plaintiff in his original opposition to Bell's motion for partial summary judgment, are inadmissible evidence for the reasons set forth below.

## I. INTRODUCTION

On May 2, 1985, E.F. Hutton & Company, Inc. ("Hutton"), a wholly owned subsidiary of defendant, The E.F. Hutton Group, Inc., pled guilty in the United States District Court for the Middle District of Pennsylvania to 2,000 counts of mail and wire fraud. The Department of Justice decided not to prosecute individual Hutton executives and instead accepted a plea from Hutton to pay a $2 million fine, to pay a $750,000 reimbursement to the government for its costs, and to pay restitution to defrauded banks. In addition, Hutton was enjoined from engaging in certain cash management practices.

Questions raised over the allegedly lenient treatment given Hutton and its personnel led to a number of government probes, including the congressional hearings that plaintiff is attempting to admit into evidence. In May 1985, The E.F. Hutton Group, Inc. hired Griffin B. Bell and the law firm of King & Spalding to conduct a separate investigation of the cash management program at Hutton that had resulted in the guilty plea. Based on this investigation, a report entitled "The Hutton Report" was issued on September 4, 1985 and made available to the public by Mr. Bell at a press conference in Washington, D.C. the following day.

The Hutton Report named a number of individuals as being responsible, at least in part, for the fraudulent practices resulting in Hutton's guilty plea. The report also recommended certain sanctions for these individuals. Among the persons held responsible in The Hutton Report was John M. Pearce, who had been branch manager of the Hutton office in St. Louis. Pearce filed suit on January 3, 1986 against The E.F. Hutton Group and against Griffin Bell. Pearce alleges that Bell was hired to produce a report that would place blame for the fraudulent cash management program with low level employees rather than with Hutton's senior officers. As a result, plaintiff claims the Hutton Report is false, libels him, and places him in a false light.

On April 16, 1986, this court denied The E.F. Hutton Group's motion to stay these proceedings pending arbitration. On April 28, 1986, that decision was appealed. On June 10, 1986, a stay of this action, pending the appeal, was granted solely with regard to defendant, The E.F. Hutton Group, Inc.

The case regarding defendant Bell had been scheduled to go to trial on March 2, 1987. On February 9, 1987, however, trial was postponed after several motions were filed that convinced the court this case was simply not ready to proceed. On January 15, 1987, defendant Bell filed a motion for partial summary judgment. Plaintiff opposed that motion on January 27th. A second motion for summary judgment was filed by Bell on January 29th. Before plaintiff opposed the second motion, Bell filed a motion to strike plaintiff's opposition to the first motion for partial summary judgment.

Bell's motion to strike was based on two arguments. First, plaintiff's opposition had failed to meet the requirements of Fed.R.Civ.P. 56 and Local Rule 108(h) because his statement of genuine issues included arguments and allegations without citation to the record. Second, where plaintiff did provide supporting citations, he relied heavily on inadmissible evidence. At the status conference held on February 9, 1987, this court granted Bell's motion to strike plaintiff's opposition.

Plaintiff, however, was given another opportunity to file oppositions, conforming to Fed.R.Civ.P. 56 and Local Rule 108(h), to both outstanding motions for summary judgment. That ruling left open the question of whether the congressional hearing materials plaintiff had relied on in the first opposition could again be cited to in plaintiff's new oppositions. Bell's motion to strike alleged that the material was inadmissible hearsay, and prejudicial in any event. At the status conference, plaintiff was allowed to file an opposition to the motion to strike that addressed Bell's position by contending the material came within the "public records and reports" hearsay exception found in Fed.R.Evid. 803(8)(C). Also at the status conference, the court heard oral argument on the issue.

## II. ADMISSIBILITY UNDER FEDERAL RULE OF EVIDENCE 803(8)(C)

In the original opposition to Bell's motion for partial summary judgment, plaintiff submitted a statement of genuine issues that cited to a draft report of the Subcommittee on Crime of the House Judiciary Committee, excerpts of testimony before that Subcommittee, a staff analysis of defendant Bell's Hutton Report, and a statement of the Chairman of the Subcommittee given to the Senate Judiciary Committee. Defendant Bell contends that all these ma-

terials are inadmissible hearsay that do not fit under any of the rule's exceptions. Plaintiff argues that Fed.R.Evid. 803(8)(C) applies and that all these materials constitute admissible evidence.

### A. Report of House Subcommittee

█ In his opposition to the motion to strike, plaintiff directly argues for the admission of only one of the disputed materials, the Draft Report of the Subcommittee on Crime of the House Judiciary Committee. Subcomm. on Crime of the House Comm. on the Judiciary, 99th Cong., 2d Sess., *Draft Report on the E.F. Hutton Mail and Wire Fraud Case* (1986) [hereinafter Draft Report]. Plaintiff contends that since this report is the result of a congressional investigation, it constitutes the type of evidence covered by Fed.R. Evid. 803(8)(C).

Rule 803(8)(C) states:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness: .... Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... the factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Fed.R.Evid. 803(8)(C). Though the rule does not explicitly exclude reports by congressional committees, the Advisory Committee notes point out that the rule starts with the presumption of admissibility but provides ample provision for escape if sufficient negative factors are present. Fed. R.Evid. 803(8)(C) advisory committee's note. An examination of the Draft Report clearly shows it is replete with negative factors.

"To be admissible under Rule 803(8)(C), a report must first be a set of 'factual findings'." *Bright v. Firestone Tire & Rubber Co.*, 756 F.2d 19, 22 (6th Cir.1984). Despite plaintiff's characterization of the Draft Report made during oral argument, there are no true factual findings made in the document. As in *Bright v. Firestone Tire &*

*Rubber Co.*, the proffered evidence is mostly comprised of the Subcommittee's subjective comments, criticisms, arguments, and evaluations. *Id.* In fact, the majority section of the Draft Report states:

The Subcommittee, in furtherance of its oversight responsibility over the Department [of Justice], undertook to *understand* the scheme perpetrated by Hutton and to thus *evaluate* the conclusions reached, and actions taken, by the Department.

Draft Report, *supra* (Introduction, at 1) (emphasis added). No where was an attempt made to formulate or set forth separate factual findings.

Preparation of a separate section of individually numbered paragraphs designated as "factual findings", of course, is not a prerequisite to meeting the provisions of rule 803(8)(C). This court recognizes that much of the difficulty with the rule is its treatment of "evaluative" reports. *See* Fed.R.Evid. 803(8)(C) advisory committee's note. Indeed, plaintiff has relied heavily on a discussion of the admissibility of evaluative reports in *United States v. American Telephone & Telegraph Co.*, 498 F.Supp. 353 (D.D.C.1980).

In *U.S. v. AT & T*, Judge Harold Greene found certain decisions of the Federal Communication Commission to be admissible under rule 803(8)(C) despite the fact that the documents did more than simply memorialize observed facts. *Id.* at 360. That they tended towards the conclusory rather than the factual did not bar their admissibility because the dispositive factor was their "fundamental trustworthiness." *Id.* While the trustworthiness of the Draft Report is discussed in greater detail below, it is sufficient to note here that such a factor alone adequately distinguishes this case from the decision in *U.S. v. AT & T*. The *AT & T* case dealt with the actions of an independent regulatory commission. As Judge Greene noted:

[I]t is significant that the public agency which made these findings is an independent regulatory commission ... operating under stringent procedural guidelines

*on a public record.... That circumstance provides an element of trustworthiness which might not be present with respect to a public record generated by a person or body lacking these characteristics.*

*Id.* at 366 (emphasis added). In the case at bar, the court is presented with documents produced by the Congress—a politically-motivated, partisan body.

Even if the instant action were dealing with a government office with the same objectivity and independence as that in the *AT & T* case, however, the Draft Report would still fail to meet the factual findings requirement embodied in rule 803(8)(C). The Draft Report makes no attempt to isolate or distinguish any factual findings from its subjective criticisms and conclusions.

In *U.S. v. AT & T*, the court admitted designated portions of decisions from agency adjudicatory proceedings even though some of the factual findings included conclusions by the agency. The court refused to admit, however, portions of one of the decisions because that decision dealt entirely with a rule-making (rather than an adjudicatory) proceeding. *Id.* at 361 n. 20. Thus that decision could have no factual findings within the meaning of rule 803(8)(C). *Id.* The *AT & T* opinion is therefore entirely consistent with the rule and accompanying advisory notes. The court's discussion of the admissibility of evaluative reports must be seen in the narrow context of adjudicatory decisions that happen to include some conclusory language in addition to factual findings.

The instant case does not deal with an adjudicatory proceeding nor even with an investigation whose stated purpose was the resolution of some factual dispute. As noted earlier, the goal announced in the introduction of the Draft Report was merely to evaluate the Justice Department's actions. The Draft Report therefore does not have factual findings within the meaning of rule 803(8)(C).

Rule 803(8)(C) is inapplicable for another reason. Even if the Draft Report consisted of factual findings, the rule requires such findings to have been the result of an investigation made pursuant to authority granted by law. The Subcommittee conducted its investigation of the Justice Department's handling of the Hutton investigation as part of its oversight responsibilities. Thus the evaluation, comments, and criticisms of the Hutton Report and Griffin Bell's investigation are not within the scope of the Subcommittee's investigatory authority in this matter.

Finally, even if there were factual findings, and even if they had been made pursuant to authority granted by law, this court concludes that the Draft Report lacks sufficient trustworthiness to be admitted under an exception to the hearsay rule. This determination is within the discretion of the trial court. *Bright v. Firestone Tire & Rubber Co.*, 756 F.2d at 22. Rule 803(8)(C) only permits the introduction into evidence of "the factual findings of an *objective* government investigation." *Baker v. Firestone Tire & Rubber Co.*, 793 F.2d 1196, 1199 (11th Cir.1986). Given the obviously political nature of Congress, it is questionable whether any report by a committee or subcommittee of that body could be admitted under rule 803(8)(C) against a private party. There would appear to be too great a danger that political considerations might affect the findings of such a report.

Plaintiff has cited one case where portions of a congressional report were admitted into evidence. In *Hobson v. Wilson*, 556 F.Supp. 1157, 1181 (D.D.C.1982), the court admitted excerpts from the final report of a senate committee. The committee in *Hobson*, however, was not a regular Committee or Subcommittee, but a special "Select Committee" established to conduct an investigation of the intelligence activities of the United States. Obviously there are still potential problems with political influences undermining the trustworthiness of any report from such an entity. The admissibility issue in *Hobson*, however, appears to have been a relatively minor one (given the complete discussion of it in less

than one page of a forty page opinion), and thus the court did not explain in great detail why it found the report to be trustworthy.

Nevertheless, the district court in *Hobson* may have concluded that dangers from a lack of trustworthiness were minimized sufficiently where one was dealing with a Select Committee engaged solely in a special investigation, where only certain designated portions of the Committee's report were being admitted, where those portions dealt only with a factual description of an intelligence operation, where those portions had been joined in by members of both political parties, and where other portions of the report had already been admitted by stipulation. Not one of these mitigating circumstances is present in the case at bar.

Plaintiff is attempting to have the Draft Report admitted in its entirety. A report that includes much more than a mere description of the Justice Department's E.F. Hutton investigation, a report that was hotly disputed and dissented to directly along lines of political affiliation, and a report that has been completely objected to by defendant Bell. Furthermore, unlike the description of the intelligence operation admitted in *Hobson*, the comments and criticism of Bell's investigation and the Hutton Report were not the focus or even among the tasks of the Subcommittee on Crime. As such, it is clear that any effort at evaluating Bell's investigation and the Hutton Report had to be of low priority to the members of the Subcommittee—a fact further undermining the trustworthiness of the Draft Report, at least for purposes of the instant case.

The holdings and reasoning of the Courts of Appeals decisions in *Baker* and *Bright* are more on point than the district court opinion in *Hobson*. In *Baker* and *Bright*, two Circuits (the Eleventh and the Sixth, respectively) both upheld district court decisions to exclude portions of a House Subcommittee report because the Subcommittee report "did not contain the factual findings necessary to an *objective* investigation, but consisted of the rather heated

conclusions of a politically motivated hearing." *Baker*, 793 F.2d at 1199 (emphasis added); *see also Bright*, 756 F.2d at 22–23. Given a review of the Draft Report, and the discussion of its "trustworthiness" up to this point, it is clear that this report, like the one in *Baker* and *Bright*, cannot meet the requirements of rule 803(8)(C).

**B. Excerpts From House Hearings**

■ Though plaintiff has not directly addressed the admissibility of the testimony before the House Subcommittee on Crime in his opposition to Bell's motion to strike, counsel contended at oral argument that such testimony was admissible, presumably based also on rule 803(8)(C). Given the preceding conclusion that the Draft Report itself cannot be admitted under that rule, it is clear that testimony before the Subcommittee is also inadmissible as direct evidence, though it may be used for impeachment purposes at trial.

Furthermore, even if the Draft Report had been admissible, testimony before a congressional committee is manifestly hearsay. No opportunity for cross-examination of the Subcommittee's witnesses was ever given to Mr. Bell. It is one of the most fundamental rules of evidence that such testimony is inadmissible. Under no stretch of the imagination could such evidence fit within one of the exceptions to the hearsay rule—least of all rule 803(8)(C) which only applies to a government report of factual findings, not to witness testimony.

**C. Staff Analysis of the Hutton Report**

■ Again, the plaintiff did not directly address the admissibility of the Staff Analysis of the Hutton Report in his opposition to Bell's motion to strike. Nevertheless, it is assumed for purposes of argument that plaintiff contends it too is admissible under rule 803(8)(C) since plaintiff included it as exhibit B–2 to his pretrial brief and noted that he considered it incorporated as part of the Draft Report. The reasons for excluding the Draft Report, however, apply with even greater force in the context of the Staff Analysis.

In the first place, the staff of the Subcommittee on Crime are not public officers or agencies with "authority granted by law" to render factual findings. Additionally, a review of the "Analysis" clearly shows that it suffers from the same shortcoming as the Draft Report. Namely, it consists mostly of a series of criticisms of the Hutton Report without any factual findings. Further, the staff analysis, while undoubtedly forming the basis for the content of the Draft Report, was never itself adopted as factual findings by the Subcommittee on Crime. By its very nature, therefore, the staff analysis cannot satisfy the requirements of rule 803(8)(C). A similar situation in *U.S. v. AT & T* resulted in several documents being deemed inadmissible for the same reason.

In the *AT & T* case, a report (called the Walker Report) that had not been adopted by the Federal Communication Commission, and twenty-seven staff memoranda used in preparing the report, were held inadmissible since "none of these items constitutes findings of fact by the respective agencies as required by Rule 803(8)(C)." 498 F.Supp. at 367. In fact, the court in *AT & T* stated: "[t]he twenty-seven staff memoranda used in the preparation of the Walker Report are even further removed from final findings of fact by a public agency [than the unadopted Commission Report]." *Id.*

Even if the Staff Analysis could somehow constitute the factual findings of a public officer or agency, the document would still be inadmissible because of a lack of trustworthiness. The "staff" of the Subcommittee on Crime is an anonymous group of individuals. They served at the pleasure of the members of the Subcommittee majority. The staff had no independence (because of the need for loyalty to the Subcommittee members) or accountability to the public. To suggest that their "Analysis" could be an objective evaluation free from most the dangers of partisan politics which could undermine the report's trustworthiness is ludicrous.

Therefore, the "Staff Analysis" fails to meet the requirements of rule 803(8)(C). Since the document is clearly hearsay, and since it fails to come under any exception to the hearsay rule, the "Staff Analysis" must also be excluded as inadmissible evidence.

### D. Statement of Subcommittee Chairman Hughes

■ Here too, the plaintiff failed to directly address the admissibility of this evidence. It is again assumed that plaintiff contends this material is admissible under rule 803(8)(C) since the statement by Chairman Hughes related to subject of the Subcommittee's Draft Report. As discussed earlier with regards to the admissibility of witness testimony, this proposed evidence is manifestly barred by the hearsay rule. Even if the Draft Report were to meet the requirements of rule 803(8)(C), the statement by Chairman Hughes could not be admitted under any hearsay exception theory.

### III. ADMISSIBILITY UNDER FEDERAL RULE OF EVIDENCE 403

■ Even if plaintiff was able to meet the requirements of rule 803(8)(C), this court would exercise its discretion to exclude the proposed evidence under Federal Rule of Evidence 403. Rule 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed.R.Evid. 403. Several of the above factors are present in the case at bar.

First, there is the danger of unfair prejudice to defendant Bell because of the undue weight that a jury is likely to attach to the official reports from Congress and the often inflammatory or exaggerated statements made in testimony before Congress or by a political official. *See Bright v. Firestone Tire & Rubber Co.,* 756 F.2d at 23. Second, there is the very strong possi-

bility of confusion of the issues and misleading the jury both because of the size or amount of the proposed evidence and because of the host of collateral, even irrelevant, matters dealt with in the Draft Report and other proposed materials.

The sheer vastness of the material sought to be introduced alone justifies this court holding the proposed evidence inadmissible. In fact, in the *AT & T* case, the court held that a 600 page FCC report, moved for introduction under rule 803(8)(C), was inadmissible under circumstances very similar to the instant case. 498 F.Supp. at 367. The movant had simply asked for the report to be admitted in its entirety without designating particular paragraphs or sections. The court noted that the report ran the gamut from straight factual description to speculative conclusions. Thus, introduction of the report would have required the court on its own to sift through hundreds of pages to extract factual findings from conjecture. The court held that on such a ground alone it would be justified in denying admission of the report. *Id.*

The similarity of the situation in *U.S. v. AT & T* to the case at bar is patently obvious. Plaintiff's proposed admissions consist of literally hundreds of pages of Subcommittee hearings, staff reports, Subcommittee reports, and appendices. The amount of material not only makes it impractical for the court and jury to sift through the evidence, it also needlessly complicates and confuses the issues for trial. The Draft Report and other materials contain voluminous extraneous discussions and criticisms that might sway the jury though irrelevant to plaintiff's libel claim. Additionally, the sheer glut of the material presented during the Subcommittee's hearings would undoubtedly generate an extensive effort on the part of defendant Bell to move for the admission of other testimony excerpts considered helpful to his case, or to litigate matters at best only marginally related to the complaint in this action.

The result is that even if a limiting instruction could be devised for the jury so that they could properly evaluate plaintiff's proposed evidence, the case would become hopelessly unmanageable for the court if this material were deemed admissible. The plaintiff has available numerous other options and means for proving his case. To admit the Draft Report and other materials would needlessly complicate this action, confuse the issues, mislead the jury, and unfairly prejudice the defendant. In fact, in the face of such an enormous amount of irrelevant or at best tangentially related material, it is difficult to imagine how the defendant could shape his defense.

As noted by the court in the *AT & T* case when faced with the admission of a huge report of largely collateral material, "Rule 403 of the Federal Evidence rules permits the Court to balance the probative value of evidence against considerations of undue delay or waste of time, and to decide in favor of exclusion where the latter outweighs the former." 498 F.Supp. at 368. In the case at bar, the probative value of the Draft Report and the related materials is very weak given its hearsay nature and its domination by largely irrelevant matters. Therefore, this court holds that since the probative value of the proposed evidence is outweighed by its unfair prejudice to the defendant, possible confusion of the issues and misleading of the jury, and the delay and waste of time prior to and during trial that would ensue upon its introduction, the Draft Report and related materials discussed in this opinion should be excluded under rule 403.

## IV. CONCLUSION

For the reasons stated above, the Draft Report of the Subcommittee on Crime of the House Judiciary Committee, the excerpts of testimony before that Subcommittee, the "Staff Analysis of the Hutton Report", and the statement by Subcommittee Chairman Hughes to the Senate Judiciary Committee are all inadmissible hearsay that do not come within any exception to the hearsay rule. Furthermore, even if the

**818**

Draft Report and other materials were not hearsay, the proposed evidence would still be inadmissible because its probative value is substantially outweighed by most of the factors noted in Fed.R.Evid. 403. An appropriate order accompanies this Memorandum Opinion.

### ORDER

This matter came before the court at a status conference held on February 9, 1987, and upon defendant Bell's motion to strike plaintiff's opposition to defendant Bell's motion for partial summary judgment. After hearing oral argument, and after considering Bell's motion, plaintiff's opposition, the underlying papers, and the entire record in this case, it is, by the court, this 12th day of February, 1987,

ORDERED that for the reasons stated in the accompanying Memorandum Opinion, defendant Bell's motion to strike, with regards its request to exclude evidence, is granted; and it is further

ORDERED that the Draft Report on the E.F. Hutton Mail and Wire Fraud Case by the Subcommittee on Crime of the House Committee on the Judiciary of the 99th Congress, Second Session, the Subcommittee's staff analysis of the Hutton Report, the statement by Subcommittee Chairman Hughes to the Senate Committee on the Judiciary, and the testimony given before the Subcommittee, are inadmissible evidence; and it is further

ORDERED that plaintiff shall not use the Draft Report, or any of other materials noted above that have been held to be inadmissible evidence, in support of his oppositions to the currently pending motions for summary judgment.